# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CRANDALL COLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No.: 10-cv-03329 |
| ) | |
| BOARD OF EDUCATION OF ) | Judge Robert M. Dow, Jr. |
| NORTH CHICAGO COMMUNITY ) | |
| UNIT SCHOOL DISTRICT 187, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Crandall Collins filed this lawsuit, alleging that Defendants Board of Education for the North Chicago Community Unit School District 187, North Chicago Community Unit School District 187, Missouri Myers, Sharon Epps, and Henrietta Graham violated his constitutional rights when the Board failed to hire him for a vacant position within the District. This matter is before the Court on Defendants' motion to dismiss [28] Plaintiff's amended complaint [26]. For the reasons stated below, the Court grants Defendants' Motion to Dismiss [28]. Counts I and IV are dismissed with prejudice, and Counts V and VI are dismissed with prejudice to the extent that they are based on Illinois state law. To the extent that Counts V and VI reflect federal claims based on Plaintiff's right to free speech, the counts remain pending. The Court also dismisses Plaintiff's Counts VII and VIII without prejudice, and gives Plaintiff twenty-one days from the date of this order to submit a motion for leave to file a second amended complaint if he believes that he can do so consistent with the discussion below. Defendant North Chicago Community Unit School District 187 is dismissed as a Defendant.[1]

---

[1] While Plaintiff uses the terms "Board" and "District" interchangeably, the proper defendant is the North Chicago Community School Board, not the North Chicago Community Unit School District 187. See 105 ILCS 5/10-16.7 (providing that the board shall direct the selection, retention, and dismissal of employees).

**I.     Background[2]**

Plaintiff Crandall Collins ("Plaintiff" or "Collins") applied for the position of human resources director with the North Chicago Community Unit School District 187 (the "School District") twice, once in 2004 and once in 2009.[3] In 2004, after interviewing Collins, the North Chicago Community Unit School Board (the "School Board" or "Board") selected a different candidate to fill the position.

In the spring of 2009, prior to Plaintiff re-applying for a position with the School District, the Board held elections to fill four vacant Board seats. At the time of this election, Defendants Missouri Myers and Henrietta Graham held two seats not up for reelection. Defendant Sharon Epps, then a member of the Board, ran for re-election to fill one of the four vacant seats. Lanelle Collins, Plaintiff's wife, ran on a ticket with two others (Kenneth Robinson and Jill Janezich) to fill the three remaining seats. On the eve of the election, Plaintiff distributed election notice flyers for his wife and the two others running on her ticket. Lanelle Collins, Robinson, and Janezich were all elected to the Board, and Defendant Epps was reelected.

Soon after the elections, in August of 2009, Plaintiff again applied for a vacant position with the School District. Plaintiff alleges that no mention was made prior to his applying for the position that a "Type 75 Administrative Certificate" was required for the position, but that after he applied, Defendants Myers, Epps, and/or Graham sought to add a requirement that candidates for the position possess this Administrative Certificate. Plaintiff holds no such certification. The Board ultimately voted against adopting the Type 75 Administrative Certificate requirement.

---

[2] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

[3] The District is a public school district in Lake County.

In September 2009, the Board placed Plaintiff's job application on its executive session agenda. By its own procedural rules, the Board was required to reach a consensus during its executive session as to whether it would place Plaintiff's employment application on the agenda for an open session, where the application would be the subject of a discussion and vote. Plaintiff's wife (at that point a member of Defendant School Board) "excused herself" from the executive session vote. Plaintiff alleges that during the executive session, Defendants Myers, Epps and Graham initially sought to declare Plaintiff's employment application ineligible because Plaintiff had "'campaigned for Collins and the others on her ticket' or words to that effect and of similar import." Plaintiff also alleges that "during the Executive Session and later," Defendant Myers noted that she had contacted Plaintiff's references and reported that she had found that Plaintiff had "'problem references' or words to that effect and of similar import." Plaintiff alleges that three members of the Board (Robinson, Murray and Janezich) voted to place Plaintiff's employment application on the Board's next open session, but that the remaining three members, Defendants Myers, Epps and Gram, voted against doing so.

Subsequent to the executive session meeting, Plaintiff alleges that Defendant Epps told Plaintiff that she "'had no doubt that he was more that [sic] qualified but she would not vote for anyone without a Type 75 Administrative Certificate' or words to that effect and of similar import." Plaintiff alleges that the Board "has failed and refused" to put Plaintiff's employment application on the agenda of its open session for discussion for a vote; he also alleges that the Board has failed to "otherwise advise him as to his candidacy for the Position." Plaintiff alleges that he wrote to the Board on March 4, 2010, seeking a resolution of the matter, but his letter went unanswered. Finally, Plaintiff alleges that he has submitted his resume and job application to "several hundreds of human resources and other positions and job postings," but has been unable to find employment in this field.

On April 30, 2010, Plaintiff brought a ten-count complaint against the School District, the School Board, Epps, Myers, Graham, and Roycealee Wood in the Illinois Circuit Court for the Nineteenth Judicial Circuit in Lake County, Illinois. On June 1, Defendants removed the case to this Court. Defendants then moved to dismiss Plaintiff's initial complaint, and Plaintiff countered by filing an amended complaint. Although Plaintiff failed to request leave of court to file this amended complaint, which prompted a motion to strike by Defendants, the Court eventually granted Plaintiff's oral motion for leave to file an amended complaint.

Plaintiff's amended complaint sets forth eight counts: (1) a claim based on Illinois statute 105 ILCS 5/10, alleging the Individual Defendants violated their obligations set out in their Oath of Office they took as School Board members; (2) a request for an order of mandamus against the Individual Defendants based again on their alleged breach of their Oath of Office under 105 ILCS 5/10, and under 105 ILCS 5/3-15.5, giving a county superintendant the power to remove members of any school board from office for willful failure to perform official duties; (3) a defamation *per se* claim based on Defendant Myers' statement that Plaintiff had "problem references"; (4) a defamation *per quod* claim based on the same facts as Count III; (5) a § 1983 claim based on the First Amendment to the United States Constitution and Article I, § 4 of the Illinois Constitution alleging that Defendants retaliated against Plaintiff after he campaigned on his wife's behalf; (6) a § 1983 claim alleging that Defendants deprived Plaintiff of his constitutional rights and "failed to act to remedy an unconstitutional wrong committed with deliberate indifference" when they refused to consider Plaintiff's employment application because he campaigned for his wife in the school board elections; (7) a claim based on the Fourteenth Amendment to the United States Constitution alleging that Defendants deprived Plaintiff of his substantive due process rights because their failure to and refusal to place Plaintiff's employment application on their open session agenda was "arbitrary and irrational"; and (8) a claim based on the Fourteenth Amendment to the

United States Constitution alleging that Defendants deprived Plaintiff of his procedural due process rights by failing to afford him with an opportunity for a pre-determination notice and hearing, a post-determination administrative review of the determination, and a right to be heard at the review.

Defendants moved to dismiss all counts of the amended complaint pursuant to Fed. R. Civ. P 12(b)(6), save for Plaintiff's § 1983 claim for violation of the First Amendment, which is encompassed in Counts V and VI. Defendants contend that Plaintiff's claims based on Illinois state law are barred by the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2, and that his Fourteenth Amendment claims fail to adequately allege the necessary elements to demonstrate deprivation of any of Plaintiff's recognized interests. In Plaintiff's response to Defendants' motion to dismiss, he introduced new legal theories to support his Fourteenth Amendment claims, so that they are based on the deprivation of Plaintiff's free speech rights (essentially, the same grounds laid out in Counts V and VI of the Amended Complaint).

On December 7, 2010, Plaintiff stipulated to the dismissal of Counts II (the only claim against Defendant Wood) and Count III (defamation *per se*).

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the

possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

### III. Analysis

#### A. Tort Immunity Act

Defendants argue that all of Plaintiff's state law claims are barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the "Tort Immunity Act" or the "Act"), 745 ILCS 10/1-101 *et. seq.* According to Defendants, Count I (violation of 105 ILCS 5/10 § 16.5 (Oath of Office)) and Count IV (defamation *per quod*) should be dismissed on this ground, as should Counts V (free speech civil rights violation under Illinois Civil Rights Act of 2003, Art. I § 4 of Illinois Constitution, and/or First Amendment to the U.S. Constitution) and VI (deprivation of constitutional rights under Illinois Civil Rights act of 2003, Art. I § 4 of the Illinois Constitution, and/or 42 U.S.C. § 1983), to the extent that they are based on state law. In his response brief, Plaintiff fails to address Defendants' contention that the Tort Immunity Act bars his state law claims.

The Tort Immunity Act provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy and when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. The Act also provides that "[a] local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103. Nor are local public

entities "liable for any injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. The Act defines "employee" as including a "member of a board * * * whether or not compensated" (745 ILCS 10/1-202), and defines "local public entity" as including a "school district" and a "school board" (745 ILSC 10/1-206). The Tort Immunity Act applies only to tort actions and does not bar actions for constitutional violations. See *People ex rel. Birkett v. City of Chicago*, 758 N.E.2d 25, 30 (Ill. App. Ct. 2d Dist. 2001).

Section 2-201 of the Tort Immunity Act "immunizes public employees from liability where the injury claimed is the result of a 'discretionary policy determination.'" *Doe 20 v. Board of Educ. of Comm. Unit School Dist. No. 5*, 680 F. Supp. 2d 957, 988 (C.D. Ill. 2010) (citing *Albers v. Breen*, 806 N.E.2d 667, 673 (Ill. App. Ct. 4th Dist. 2004)). Section 2-201 immunity protects against both negligent and willful and wanton conduct. *Id.*; see also *In re Chicago Flood Litigation*, 680 N.E.2d 265 (Ill. 1997). The Seventh Circuit, following the lead of Illinois appellate courts, has held that decisions regarding "the hiring and firing of employees is inherently discretionary, within the meaning of § 2-201 of the Tort Immunity Act." *Mann v. City of Chicago*, 182 F.3d 922, 1999 WL 510748, at *2 (7th Cir. July 14, 1999) (citing *Anderson v. Grayslake School Dist. No. 46*, 1997 WL 639032, at *1 (N.D. Ill. Oct. 3, 1997)); see also *Johnson v. Mers*, 664 N.E.2d 668, 674-75 (Ill. App. 2d Dist. 1996); *Anderson v. Grayslake School Dist. No. 46*, 1997 WL 639032, at *1 ("The school board members' discretionary act of firing Anderson is absolutely immune regardless of whether the board members acted *willfully or wantonly*."). Moreover, "[b]ecause employee actions are immune from suit for such discretionary policy decisions, the City [local public entity] is also immune from suit under the Act where the tort in question flows from the employees." *Ellis v. City of Chicago*, 272 F. Supp. 2d 729, 735 (N.D. Ill. 2003).

There is no question that Plaintiff's claims are based on Defendants' actions in their official capacity. See Pl. Resp. at 5 ("Defendants acted in their official capacity"). Thus, to the extent Plaintiff's amended complaint sounds in tort, the Tort Immunity Act grants Defendants immunity. Count IV for defamation *per quod* clearly sounds in tort and is dismissed with prejudice. To the extent that Counts V and VI sound in tort, they too are barred under the Illinois Tort Immunity Act. However, these counts also appear to allege § 1983 claims for a violation of Plaintiff's First Amendment rights,[4] and state immunity rules do not apply to actions brought under § 1983. See *Anderson v. Village of Forest Park*, 606 N.E.2d 205, 211-12 (Ill. App. Ct. 1st Dist. 1992) (holding that the Tort Immunity Act does not apply to § 1983 claims because of the Supremacy Clause of the United States Constitution); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 618 (7th Cir. 2001) (holding that defendant school board and individual defendants were immune from a teacher's defamation claims under the Tort Immunity Act but proceeding to address First Amendment claim on the merits). The Court addresses Count I (violation of 105 ILCS 5/10 § 16.5 (Oath of Office)) below.

B.   **Violation of Oath of Office by Board Members**

In Count I, Collins seeks damages against Defendants for allegedly violating a provision of the Illinois School Code, 105 ILCS 5/10-16.5, which sets forth the oath of office taken by school board members. The School Code does not contain any express private right of action for violation of this section, let alone for a board member's failure to uphold the oath of office. Numerous courts have rejected attempts to create an implied private right of action under the School Code. See *Carlson v. Bremen High School Dist. 228*, 423 F. Supp. 2d 823, 829-30 (N.D. Ill. 2006); *Porter v. Bd. of Educ. of City of Chicago*, 837 F. Supp. 255, 257-58

---

[4] Plaintiff acknowledges that the Illinois Civil Rights Act of 2003 does not apply to his case. See Resp. at 14 (acknowledging that his claim "does not fall within the scope of the Illinois Civil Rights Act). Accordingly, to the extent Counts V and VI are based on this statute, those claims are dismissed.

8

(N.D. Ill. 1993); *Ahern v. Board of Educ.*, 1992 WL 373030 (N.D. Ill. Dec. 9, 1992) (refusing to imply a private right of action under the Illinois School Code to remedy discrimination against several public school principals).

Under Illinois law, a private right of action may be implied only where: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. See *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117-18 (1999). Plaintiff's claim does not satisfy this test. The principal purpose of the School Code is not to protect the free speech rights of applicants for employment, but to improve education for public school students. *See Porter*, 837 F. Supp. at 257-58 (holding that there was no private right of action for violation of School Code provision allowing public participation and comments at board meetings, because the primary purpose of the statute was not to permit public participation but to improve education for public school students).

Implying a private right of action under Section 10-16.5 also is not consistent with the purposes of the Act. "Illinois courts have held 'that in determining whether a private right of action should be implied, it is proper to ask whether the statute is remedial, *i.e.*, does the statute seek to redress wrongs against individuals who are harmed because the statute is violated." *Emerald Pork, II, Ltd. v. Purina Mills, Inc.*, 17 F. Supp. 2d 816, 817 (N.D. Ill. 1998) (quoting *Moore v. Lumpkin*, 630 N.E.2d 982, 999-1000 (Ill. App. Ct. 1st Dist. 1994)). Here, as discussed above, the purpose of the School Code is not to redress individual wrongs, but to provide for the education of public school students. Nothing in the School Code suggests that by requiring Board members to swear an oath of office, the Legislature intended

to create a right to sue individual Board members for damages arising out of a job application, let alone to sue the Board or District as public bodies. Accordingly, Count I is dismissed.

### C. Constitutional Claims

In Counts VII and VIII, Plaintiff purports to bring § 1983 claims for violations of his constitutional rights. In order to state a claim under § 1983, Plaintiff must allege that the Defendants were acting under color of state law when they deprived him of a constitutional right. See *Estate of Sims ex rel Sims v. County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (citing *Christensen v. County of Boone, Illinois,* 483 F.3d 454, 457 (7th Cir. 2007)). "Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced." *Bublitz v. Cottey,* 327 F.3d 485, 488 (7th Cir. 2003) (citing *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997)). To allege a § 1983 violation, Plaintiff must do more then make a general allegation that his constitutional rights were violated; he must allege a deprivation of a specific constitutional right. See *Trautvetter v. Quick,* 916 F.2d 1140, 1148 (7th Cir. 1990) (citing *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 379 (7th Cir. 1988)). Even read charitably, as set forth below, Plaintiff's amended complaint does not sufficiently allege a § 1983 due process claim or a § 1983 occupational liberty claim.

#### 1. Due Process Claims (Counts VII and VIII)

In his amended complaint, Plaintiff alleges that Defendants deprived him of his right to be employed. Specifically, he alleges that he enjoys the right "to be free from the stigma of being arbitrarily and irrationally declared unqualified for a position for which he is qualified." According to Plaintiff, "Defendants' failure to and refusal to place [Plaintiff's 2009 job application] on its Open Session agenda was arbitrary and irrational and so stigmatized [Plaintiff]." Plaintiff subsequently "has applied to hundreds of employers for employment and has not been able to find employment in his chosen field." Stripping away the

surplusage, Plaintiff claims that he was denied prospective employment with the District without due process of law.

The Fourteenth Amendment imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Due Process Clause. See *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). To assert a violation of the Due Process Clause, Plaintiff must be able to show that he had a 'property interest' and that he was deprived of this interest without due process of law. *Phelan v. City of Chicago,* 347 F.3d 679, 681 (7th Cir. 2003) (citing *Bishop v. Wood,* 426 U.S. 341, 343 (1976)). Specifically, Plaintiff's due process claims turn upon whether he had a property right in *prospective* employment with the District. To demonstrate that he was deprived of a protected interest, Plaintiff "must first establish that he had a property interest * * * of the sort that the Constitution protects." *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996). Property interests are not created by the United States Constitution; "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Moore v. Muncie Police and Fire Merit Com'n*, 312 F.3d 322, 326 (7th Cir. 2002) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).[5]

A property interest can be established by demonstrating a property right in continued employment. See *id.* In the employment context, a property interest can be created in one of

---

[5] For example, in the context of fired public employee bringing a procedural due process claim against his employers, the Seventh Circuit recently stated that "[a] property interest in continued employment 'can be created in one of two ways, (1) by an independent source such as state law securing certain benefits; or (2) by a clearly implied promise of continued employment.'" *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (citing *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003)). To support a due process claim in the context of public employment, the Seventh Circuit held that the plaintiff must have an "entitlement to continued employment," such as a collective-bargaining agreement. *Palka*, 623 F.3d at 452 (citing *Lee v. County of Cook*, 862 F.2d 139, 141 (7th Cir. 1988); *Krieg v. Seybold*, 481 F.3d 512, 519-20 (7th Cir. 2007)).

two ways: "(1) by an independent source such as state law securing certain benefits; or (2) by a clearly implied promise of continued employment." See *Phelan,* 347 F.3d at 681 (citing *Shlay v. Montgomery,* 802 F.2d 918, 921 (7th Cir.1986)). While the "lack of a contractual or tenure 'right' to [employment] is immaterial to [a] free speech claim," this right is vital to the determination of whether a property interest exists under the Due Process Clause. *Pleva v. Norquist*, 195 F.3d 905, 914 (7th Cir. 1999). Plaintiff bears the burden of proving that he has a property interest in his employment. See *Krieg v. Seybold,* 481 F.3d 512, 520 (7th Cir. 2007) (holding plaintiff bears the burden of showing that he had a property interest in his job arising out of a state statute, state or municipal regulations, or a contract with a public entity).

In *Moore v. Muncie Police and Fire Merit Commission*, the Seventh Circuit held that an applicant for a firefighter position who received a conditional offer of employment, but whose offer was later retracted because of his age, did not have a property interest in the job. *Moore*, 312 F.3d 322, 326-37 (7th Cir. 2002). The court reasoned that "[i]n order to create a justifiable and reasonable expectation of employment, and thereby establish a property interest, there must be a 'mutually explicit understanding' between the parties." *Id.* at 326 (citing *Crim v. Board of Educ. of Cairo Sch. Dist. No. 1.*, 147 F.3d 535, 545 (7th Cir. 1998). Because the firefighter applicant in *Moore* had never been officially hired, "his allegation that he had a mutually explicit understanding with the [hiring entity] regarding future employment * * * is without merit." *Moore*, 312 F.3d at 326. The Seventh Circuit has also held that "an employee has no property interest in a *prospective* promotion, even when placed on an eligibility or ranking list." *Id.* at 327 (citing *United States v. City of Chicago*, 869 F.2d 1033, 1038 (7th Cir. 1989)); *Thomas v. Board of Examiners*, 866 F.2d 225, 227 (7th Cir. 1988) (per curiam); *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985).

12

Here, there was no "mutually explicit understanding" between Defendants and Plaintiff. Unlike the plaintiff in *Moore*, Defendants had not even offered Collins a *conditional* offer of employment; in fact, they had offered him nothing at all. "To recognize a 'property' interest for an appointment to a classified position in the realm of public employment would drastically extend the scope of the due process clause and we refuse to make that extension." *Petru v. City of Berwyn*, 872 F.2d 1359, 1363 (7th Cir. 1989) (refusing to find that a job applicant for a firefighter position had been denied procedural due process rights after he was not selected for the job, despite the fact that he ranked first on the city's eligibility hiring list for firefighters). Likewise, extending the property interest to all applicants for positions with public entities would also "drastically extend the scope of the due process clause" in a manner clearly not envisioned by the Seventh Circuit.

While the Court accepts all well-pleaded facts in the complaint as true, the Court does not have to accept as true conclusory statements of law or unsupported conclusions of fact. See *Snodderly v. R. U.F.F. Drug Enforcement Task Force,* 239 F.3d 892, 896 (7th Cir. 2001). Simply claiming a property right in a future job without facts to support the naked conclusion is not enough to sufficiently plead a property interest. See *Lee v. County of Cook,* 862 F.2d 139, 141-42 (7th Cir. 1988) (holding that to assert a property interest a plaintiff must allege enough facts to show that she "has a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause"). Plaintiff's amended complaint sets forth no facts to show that he had a property interest in the position of human resources director with the North Chicago Community Unit School District 187. His unsupported conclusion that he had a property right in being free from the stigma of being declared unqualified is plainly insufficient to properly plead a property interest in employment.

Because a property interest is required to state a cause of action for a Due Process violation and Plaintiff has failed to allege facts from which a property interest can be

conferred, Plaintiff has failed to state a due process claim. See, *e.g., Lee,* 862 F.2d at 141-42 (affirming dismissal of state employee's third amended complaint where plaintiff did not allege facts showing a property interest in her job); *Smith v. Bd. of Educ. of Urbana School Dist.,* 708 F.2d 258, 264-65 (7th Cir. 1983) (affirming dismissal for failure to state a claim where plaintiff's complaint did not allege facts from which a property interest in employment could be inferred).[6]

### 2. *Occupational Liberty Claim*

In *Palka*, the Seventh Circuit also considered whether the plaintiff had adequately alleged a violation of his interest in his occupational liberty under the Fourteenth Amendment. While Plaintiff has not expressly alleged an occupational liberty claim, his allegations could be read as attempting to allege such a claim.

The concept of liberty protected by the Due Process Clause includes one's occupational liberty, or "the liberty to follow a trade, profession, or other calling."

---

[6] Plaintiff's substantive due process claim also fails because Defendants' conduct falls far short of shocking the conscience. "The Due Process Clause protects citizens from abuses of power by executive officials * * * but official misconduct will rise to the level of a constitutional violation *only if it shocks the conscience*." *Palka*, 623 F.3d at 453-54 (emphasis added). In *Palka*, the plaintiff maintained that tracing the phone call he made to the CPD officer's childrens' school and then travelling outside of their jurisdiction to visit him at home one evening qualified as conscience-shocking misconduct by the officers. The Seventh Circuit disagreed. "The threshold for this kind of due-process claim is high; many forms of governmental misconduct are excluded." *Id.* at 454 (citing *Tun*, 389 F.3d at 903 ("It is one thing to say that officials acted badly, even tortiously, but – and this is the essential point – it is quite another to say that their acts rise to the level of a constitutional violation."); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) ("Of course, every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation.")). Defendants' allegedly shocking conduct was the "failure to and refusal to consent to place [Plaintiff's job application] on its Open Session agenda." Yet Defendant School Board was under no obligation to place Plaintiff's job application on its open session agenda; instead, as Plaintiff himself notes, it was only required to reach consensus on *whether or not* to place his application on the agenda. Plaintiff also states in his response that the Court's conscience should be shocked by the fact that after Plaintiff submitted his job application to the Defendant School Board, Board members attempted to add a requirement that job applicants have a "Type-75 Administrative Certificate." This requirement was never adopted, and its proposal certainly does not shock the conscience. Finally, Defendant Myers statement during the Executive Session that she found that Plaintiff had "problem references" also does not shock the conscience; to the contrary, the behavior is not inconsistent with Defendant Myers' duties as a member of Defendant School Board to screen job applications.

*Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir. 1992). The government violates an employee's occupational liberty interest when, in the course of discharge, failure to rehire, or other adverse employment action, the employer stigmatizes the employee by making public comments that impugn "the individual's good name, reputation, honor, or integrity" or impose a "stigma or other disability on the individual which forecloses other opportumties." *Roth,* 408 U.S. at 573. The Fourteenth Amendment protects only the individual's liberty to pursue a particular occupation, however, and not the individual's right to any one job. See *Townsend v. Vallas,* 256 F.3d 661, 670 (7th Cir. 2001).

Under the occupational liberty doctrine, a plaintiff must plead that (1) the defendant made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) the plaintiff suffered a tangible loss of other employment opportunities as a result of the public disclosure. *Palka*, 623 F.3d at 454 (citing *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001)). In cases alleging deprivation of occupational liberty, "the employee's good name, reputation, honor or integrity must be called into question in such a manner that makes it virtually impossible for the employee to find new employment in his chosen field." *Townsend*, 256 F.3d at 670. "The public-disclosure element requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large." *Palka*, 623 F.3d at 454 (citing *Ratliff v. City of Milwaukee*, 795 F.2d 612, 627 (7th Cir. 1986)) (holding there was no public disclosure and therefore no constitutional violation where communications regarding reasons for a discharge of an employee were disseminated internally); see also *Townsend,* 256 F.3d at 669-70; *Harris v. City of Auburn,* 27 F.3d 1284, 1286 (7th Cir. 1994) (deprivation of occupational liberty that was "virtually devoid of any information regarding the public disclosure" of the statements was insufficient to state a claim); *Clark v. Maurer,* 824 F.2d 565, 567 (7th Cir. 1987) (no injury until the damaging information is made public); *Lashbrook v. Oerkfitz,* 65 F.3d 1339,

1349 (7th Cir. 1995) ("[T]he government must have actually participated in disseminating the information to the public").

To the extent that Plaintiff intended to allege an occupational liberty interest claim, his claim fails. Plaintiff has not alleged public disclosure of any stigmatizing comments by Defendants. His amended complaint alleges that during the Executive Session "and later," Defendant Myers stated that she had called Plaintiff's references and found "problem references." He does not allege that Defendant Myers publicly disclosed her comments or that Defendants made any other public statements regarding their failure to hire Plaintiff. Allegations against an individual are not made public for purposes of satisfying the public disclosure requirement for a violation of a liberty interest if the allegations are only communicated internally. See, *e.g. Ratliff,* 795 F.2d at 627 (no public disclosure, and therefore no deprivation of a liberty interest, where defendants did not publicize the reasons for discharge beyond the proper chain of command within the police department); *Johnson v. Martin,* 943 F.2d 15, 16-17 (7th Cir. 1991) (no public disclosure when potentially stigmatizing information in a discharged employee's personnel file that had not been disseminated beyond the proper chain of command in the police department and had not been made public). Because Plaintiff's amended complaint does not allege that Myers (or any Defendant) disclosed Defendant Myers' sole comment regarding Plaintiff's "problem references" to anyone outside the Board or the District, he has failed to plead that Defendants publically disclosed the purported stigmatizing information. He likewise fails to allege that the stigmatizing information was disseminated in such a way that the comment could reach potential future employers and cause him to suffer a tangible loss of other employment opportunities. See *Covell v. Menkis*, 595 F.3d 673, 678 (7th Cir. 2010). As public disclosure is required to show a deprivation of an occupational liberty interest, and Plaintiff has failed to

allege such disclosure, Plaintiff has failed to state a claim for a deprivation of his occupational liberty.

### 3. *Plaintiff's Response Brief*

In his response brief, Plaintiff claims that Defendants infringed upon his substantive due process rights because "(1) he enjoys a fundamental right in free speech; and (2) Defendants' actions to infringe on [Plaintiff's] fundamental right shock the conscience." Resp. at p. 9. He also maintains that Defendants infringed upon his procedural due process rights because "(1) he enjoyed a liberty interest in his free speech; and (2) Defendants deprived him [of] fair consideration of his application for employment because he exercised his constitutionally protected free speech right." Resp. at 13. These additional allegations do not appear in his amended complaint in support of Counts VII and VIII and also are inconsistent with the allegations asserted in support of Counts VII and VIII. The Court is skeptical that Plaintiff could maintain a Fourteenth Amendment due process claim, as opposed to a First Amendment claim, based on his allegations of retaliation after he exercised his First Amendment rights by campaigning for his wife. However, to the extent that Plaintiff believes that he can bring a due process claim premised on a violation of his free speech rights that is both sufficiently distinct from his federal First Amendment claims (found in Counts V and VI of his amended complaint) and consistent with the law regarding due process claims, Plaintiff is given twenty-one days from the date of this order to submit a motion for leave to file a second amended complaint.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss [28]. Counts I and IV are dismissed with prejudice. To the extent that Counts V and VI reflect federal claims, they remain pending. The Court also dismisses Plaintiff's Counts VII and VIII without prejudice, and gives Plaintiff twenty-one days from the date of this order to file a

motion for leave to file a second amended complaint if he believes that he can do so consistent with the discussion above. Defendant North Chicago Community Unit School District 187 is dismissed as a Defendant.

Dated: May 31, 2011                 _____
                                                Robert M. Dow, Jr.
                                                United States District Judge