IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRANDALL COLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No.: 10-cv-03329 |
| ) | |
| BOARD OF EDUCATION OF ) | Judge Robert M. Dow, Jr. |
| NORTH CHICAGO COMMUNITY ) | |
| UNIT SCHOOL DISTRICT 187, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Crandall Collins filed this lawsuit, alleging that Defendants Board of Education for the North Chicago Community Unit School District 187, North Chicago Community Unit School District 187, Missouri Myers, Sharon Epps, and Henrietta Graham violated his constitutional rights when the Board failed to hire him for a vacant position within the District. The Court previously dismissed North Chicago Community Unit School District 187 as a defendant[1] and also dismissed certain counts of Plaintiff's complaint. Plaintiff has since filed a second amended complaint, alleging a single count (First Amendment violation). Defendants have moved for summary judgment [110] on Plaintiff's First Amendment claim. For the reasons set forth below, the Court grants Defendants' motion for summary judgment [110].

**I.     Background**

Plaintiff Crandall Collins ("Plaintiff" or "Collins") applied for the position of human resources director with the North Chicago Community Unit School District 187 (the "School District") twice, once in 2004 and once in 2009.[2] In 2004, after interviewing Collins, the

---

[1] The Court determined that the proper defendant is the North Chicago Community School Board, not the North Chicago Community Unit School District 187. See 105 ILCS 5/10-16.7 (providing that the board shall direct the selection, retention, and dismissal of employees).

[2] The District is a public school district in Lake County.

North Chicago Community Unit School Board (the "School Board" or "Board") selected a different candidate to fill the position.

In the spring of 2009, the Board held elections to fill four Board seats. At the time of this election, Defendants Missouri Myers and Henrietta Graham held two seats not up for reelection. Defendant Sharon Epps, then a member of the Board, ran for re-election to fill one of the four seats. Lanelle Collins, Plaintiff's wife, ran on a ticket with two others (Kenneth Robinson and Jill Janezich) to fill the three remaining seats. Lanelle Collins, Robinson, and Janezich were all elected to the Board, and Defendant Epps was reelected. Sherry Murray ran in the election but did not win. However, she was later appointed to a vacant seat on the Board. On May 4, 2009, the newly elected Board Members were sworn in. After the election and the swearing in of Board Members, the District Board was comprised of Kenneth Robinson, Lanelle Collins, Sherry Murray, Jill Janezich, Henrietta Graham, Sharon Epps, and Missouri Myers. On many issues, the Board was divided into two competing camps, comprised of Myers, Graham, and Epps on the one hand and Robinson, Murray, Janezich, and Lanelle Collins on the other. Board minutes reflect this division but also reflect numerous unanimous votes by the Board as well as votes that were not split along the noted division.

Plaintiff campaigned for his wife's slate of candidates by passing out campaign literature and volunteering on Election Day. Crandall Collins' political activity was discussed during Executive Session Board meetings on September 10, 2009 and September 29, 2009, but only in the context of whether Collins actually campaigned for Janezich and, if so, whether that presented a conflict of interest which would prevent Janezich from participating in the vote for H.R. Director. Furthermore, Epps' knowledge of Collins' political activity was limited to observing a dispute that he was involved in between Jill Janezich and Gloria Harper and William King (Epps's supporters) on Election Day. Collins was present to assist Janezich. Epps did not learn that the individual whom she observed (Plaintiff) was the

2

husband of a seated Board Member until after the Election. Collins did not interact with Myers, Epps or Graham in any capacity before his wife was elected to the School Board, although Epps and Myers observed the dispute on Election Day. Collins was not aware of any personal arguments or disputes between Myers, Epps, Graham, and his wife.

On July 17, 2009, the position of Director of Human Resources for North Chicago School District 187 was posted. The job description for Human Resources Director required that the individual holding the position have a Type 75 certificate, which is a certificate that is required of certain types of administrators in Illinois. Following the posting, the District received a number of applications. Between July 19, 2009, and August 14, 2009, Angela Banbury, Plaintiff, Christopher Glover, Patricia Reynolds, Angela Smith, and Nicholas Maldonado submitted their applications for the Human Resources Director position in District 187. At the time of each of these candidates' application, the Human Resources Director position at District 187 required a Type 75 certification.

On August 20, 2009, the North Chicago Board of Education School Board met for a regular Board meeting, at which the Board acted to revise the Human Resources Director job description by removing the Type 75 requirement. According to the minutes from that meeting, Board Member Sherry Murray made the motion to revise with Board Member Jill Janezich seconding that motion. The motion carried by a vote of 4-2 with Board President Kenneth Robinson, Sherry Murray, Jill Janezich and Lanelle Collins, Plaintiff's wife, all in favor of the removal of that requirement, and Board Members Sharon Epps and Henrietta Graham voting against the removal. Janezich testified in her deposition that she did not even know what a Type 75 was, but that all she knew was "that we were going to stick together. I was grabbed in the hallway on the way to open session that we were doing to stick together and this is how I was going to vote." The military representative, Chief Anna Douglas, also voted against the removal. However, the military representative vote is not counted even

though that representative is allowed to cast a vote and give input during meetings. Board Member Missouri Myers was absent from the August 20, 2009 meeting and therefore did not vote on the proposal.

The discussion during the Executive Session portion of the August 20, 2009 meeting included arguments for and against the removal. Kenneth Robinson, Sherry Murray, and Lanelle Collins believed that the Type 75 was not required by the Illinois State Board of Education and therefore did not need to be a job requirement for the H.R. Director. Board Members Sharon Epps, Henrietta Graham, and Chief Anna Douglas testified that they believed that the Type 75 certificate, which certified the individual as being able to hold the position of Principal or School Administrator, was necessary for an H. R. Director who was responsible for matters associated with hiring and firing teachers and helping to place staff in the best possible positions. Missouri Myers was not present for the meeting and therefore did not vote on the issue; however, she indicated afterward to President Robinson that she wanted the Type 75 requirement to remain in place. After the August 20, 2009 vote to modify the H.R. Director job description by removing the Type 75 requirement, Board Member Lanelle Collins recused herself from the Executive Session portion of subsequent Board meetings at which the H.R. Director position was being discussed.

According to Dr. Lauri Hakanen, the Superintendent of District 187 during the relevant time period, a number of administrators under his direction initially screened the applications to determine a set of candidates who would be qualified for the job and who would be interviewed by the Board. On September 10, 2009, a special Board meeting was conducted at which three candidates were interviewed for the H.R. Director position. The candidates interviewed were Nicholas Maldonado, Crandall Collins and Angela Smith. Maldonado had a Type 75 certification, but Collins and Smith did not. At the time of his application and interview, Collins did not have any experience with the following: school

4

district experience in human resources; union negotiating experience; experience in the certification of school teachers; and experience with the No Child Left Behind Act. However, he had several years of private sector human resources experience at Abbott Laboratories and Allstate.

On September 16, 2009, the Board conducted a second set of interviews with additional candidates. Board members Janezich, Epps, Myers, and Graham were present for the second set of interviews, while Board members Robinson and Murray were unable to make the September 16, 2009 meeting.[3] The candidates interviewed included Christopher Glover, Patricia Reynolds, and Angela Banbury. Of those candidates, Christopher Glover had been a principal and also held an out of state certificate. Patricia Reynolds held a Type 75 certificate in Illinois and had prior school district experience, and Angela Banbury had no administrative certificate or Type 75 certification.

Jill Janezich expressed her opinion that Crandall Collins was the best interviewee from September 10 and that Patricia Reynolds was the best candidate interviewed on September 16. During her deposition, Janezich stated that she liked Patricia Reynolds because she "filled the whole page." Similarly, Dr. Lauri Hakanen, who also was present for the September 16, 2009 interviews, thought Patricia Reynolds was the best Type 75 candidate and that Collins was the best non-Type 75 candidate. However, Dr. Hakanen believed that the Type 75 certification was an important requirement for an H.R. Director and he also expressed his opinion that the Type 75 requirement should not have been removed from the H.R. Director job description. Although Dr. Hakanen recognized that Crandall Collins was a strong candidate based on his private sector experience as an H.R. representative, he had reservations about the appearance of nepotism within the District, especially in light of a recent case brought by a former board member whose wife and daughter were District employees. During his deposition, Dr.

---

[3] According to Robinson, he asked to reschedule the meeting, but the original date was kept.

Hakanen stated that he thought Reynolds was the best overall candidate. Sharon Epps, Missouri Myers, and Henrietta Graham also testified that they thought that Reynolds was the best overall candidate.

Dr. Hakanen was asked to recommend a candidate. He prepared a memorandum about the candidates interviewed for the Board.[4] In his memorandum, Dr. Hakanen indicated that he believed that avoiding the appearance of nepotism hiring and firing may have to be taken into consideration by the Board Members in their voting on the husband of a sitting Board Member, so he included a statement to that effect in his September 28, 2009 Memorandum. Dr. Hakanen stated that Patricia Reynolds was the "clear choice" of the candidates interviewed during the September 16 meeting, given her school-district-experienced and Type 75 certification. He also stated that Collins was determined to have the best "non-75 interview."

On September 29, 2009, a special meeting of the School Board took place. One of the agenda items was a vote on the hiring of an H.R. Director, provided a consensus candidate could be brought forward. At the meeting, the candidates for the H.R. Director position were again discussed. Board President Kenneth Robinson attempted to determine whether there was a consensus candidate whose application could then be voted on in open session. Discussion of the candidates as well as Dr. Hakanen's memorandum was part of the Executive Session discussion. Kenneth Robinson stated that he asked Dr. Hakanen for a recommendation as to his choice for the H.R. Director position but instead got two names submitted for consideration.

Robinson, Janezich, and Murray cast their votes for Crandall Collins. Janezich, who had been present for both sets of interviews, stated that she cast her vote for Crandall Collins

---

[4] Although she recused herself from the interviews and discussions of candidates in the Executive Session meetings of September 10, September 16 and September 28, 2009, Lanelle Collins received Dr. Hakanen's Memorandum, which she reviewed.

"for [her] safety" because she though Lanelle Collins would make her "pay for the rest of [her] life" if she did not. Lanelle Collins denies pressuring Janezich to vote for her husband. Robinson stated that he voted for Collins because he believed Collins to be the best candidate of the candidates that he interviewed. Myers, Graham, and Epps, along with military representative Chief Anna Douglas, voted for Reynolds. Epps and Myers testified that they preferred Reynolds as a candidate because she had a Type 75 certificate, interviewed well, and had a school district background. Graham testified that she voted for Reynolds because she felt that Reynolds was the best qualified candidate for the H.R. position and not because of Plaintiff's political activities. Douglas's vote was not counted, resulting in a 3-3 deadlock.

Prior to the September 29, 2009 meeting, Janezich contacted a representative from the Illinois State Board of Education (ISBE) to inquire as to what would happen if there was a 3-3 deadlock on the Board. Janezich learned that a 3-3 deadlock would result in a stalemate that would require no action other than the tabling of the issue. When it became obvious to Board President Robinson that the vote was deadlocked with three votes in favor of Crandall Collins and three votes in favor of Patricia Reynolds, there was a unanimous agreement to table the hiring of the H.R. Director.

As a result of her belief that Plaintiff campaigned for Janezich, Epps raised a possible conflict of interest during the Executive Session. At the September 29, 2009 Board meeting, it was decided that a legal opinion would be sought to determine whether Jill Janezich did indeed have a conflict of interest which prevented her from casting a vote for the H.R. Director candidate position. Robinson testified that the legal opinion was that Jill Janezich was not prohibited from voting by way of a conflict of interest. Furthermore, Janezich refused to recuse herself because she did not believe that she had a conflict of interest.

Thereafter, no further H.R. candidates were considered in 2009. At the September 29, 2009 Board meeting, no one sought to place Collins' application on the Open Session agenda

and thus none of the Board Members, including Graham, Myers or Epps voted against placing Collins' application on the Open Session agenda. Further, none of the Board Members directly sought to declare Crandall Collins' application ineligible (or otherwise block Plaintiff's candidacy) because he campaigned for his wife or others on her ticket during the April 2009 election, although the Board did seek a legal opinion about whether Janezich had a conflict of interest. Myers, Epps, and Graham never stated that they were withholding a vote for Collins or casting their vote for Reynolds due to Collins' political affiliation or campaign work. Rather, according to Collins, the source of his information regarding the allegations of discriminatory comments made by Defendants was his wife, Lanelle.

Lanelle Collins testified that she did not attend any of the Executive Session meetings at which the H.R. Director candidates were interviewed or discussed in any fashion, including the meeting of September 29, 2009, at which the issue of hiring the H.R. Director was tabled and has no knowledge from any source as to what was discussed in Executive Session on September 29, 2009. Additionally, Lanelle Collins testified that she had never (at least up until the time of her deposition) listened to any of the audio recordings from any of those meetings. Dr. Lauri Hakanen never heard politics discussed at all during Executive Sessions. In May 2011, the District 187 School Board hired Martha Gutierrez as H.R. Director. Ms. Gutierrez does not have a Type 75 certificate. The minutes reflect that the vote to hire Gutierrez passed with "yes" votes from Janezich, Murray, James Baldwin, and Kenneth Robinson; Board Members Epps, Graham, and Collins were absent.

On April 30, 2010, Plaintiff brought a ten-count complaint against the School District, the School Board, Epps, Myers, Graham, and Roycealee Wood in the Illinois Circuit Court for the Nineteenth Judicial Circuit in Lake County, Illinois. On June 1, Defendants removed the case to this Court and moved to dismiss Plaintiff's initial complaint. In response, Plaintiff filed an amended complaint, setting forth eight counts. Defendants again moved to dismiss

all counts of the amended complaint, save for Plaintiff's § 1983 claim for violation of the First Amendment, which was encompassed in Counts V and VI, and the Court granted Defendants' motion. Plaintiff then filed a one-count second amended complaint, alleging only a First Amendment violation.

## II.     Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

**III.    Analysis**

Plaintiff's second amended complaint alleges that his First Amendment rights were violated when he was not hired by the District Board for the H.R. Director position posted in 2009. Plaintiff alleges that Defendants failed to hire him for the position due to his campaign activities. Specifically, Plaintiff alleges in his second amended complaint that Defendants Myers, Epps and Graham sought to add a Type 75 Administrative Certificate requirement to the H.R. Director position (a requirement that Plaintiff could not satisfy) because of his campaigning, which precluded him from being hired. He also alleges that Defendants Myers, Epps, and Graham sought to declare his application ineligible and voted against placing his application on the Open Session agenda for vote at a District Board Meeting, also because of his campaigning. As set forth below, because discovery has developed the factual background and gutted several of Plaintiff's specific allegations, Plaintiff's First Amendment claim has been trimmed simply to a claim that Defendants failed to hire him because of his support of his wife's slate during the school board elections.

In order to state a claim under § 1983, Plaintiff must allege that the Defendants were acting under color of state law when they deprived him of a constitutional right. See *Estate of Sims ex rel Sims v. County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (citing *Christensen v. County of Boone, Illinois,* 483 F.3d 454, 457 (7th Cir. 2007)). "Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced." *Bublitz v. Cottey,* 327 F.3d 485, 488 (7th Cir. 2003) (citing *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997)). To demonstrate a § 1983 violation, Plaintiff must do more then make a general allegation that his constitutional rights were violated; he must demonstrate a deprivation of a specific constitutional right. See *Trautvetter v. Quick,* 916 F.2d 1140, 1148 (7th Cir. 1990) (citing *Wilson v. Civil Town of Clayton,* 839

F.2d 375, 379 (7th Cir. 1988)).  Plaintiff brings a § 1983 claim for violations of his constitutional right to free speech.

The First Amendment prohibits a state employer from terminating the employment of a worker on the basis of his political beliefs unless political affiliation is an appropriate requirement for the position.  See *Moss v. Martin*, 614 F.3d 707, 710 (7th Cir. 2010).  The Seventh Circuit recently clarified that in presenting a *prima facie* case of First Amendment retaliation at summary judgment, a plaintiff need only show evidence that his speech was a "motivating factor," rather than the "but for" cause, of an adverse employment action. *Greene v. Doruff,* 660 F.3d 975, 977 (7th Cir. 2011); see also *Kidwell v. Eisenhauer,* 679 F.3d 957, at 964–65 (7th Cir. 2012) (discussing *Greene).* A *prima facie* case requires evidence that: (1) Plaintiff was engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter free speech, and (3) the First Amendment activity was a motivating factor in the decision to retaliate.  See *Redd v. Nolan,* 663 F.3d 287, 294–95 (7th Cir. 2011); *Spiegla v. Hull,* 371 F.3d 928, 941–43 (7th Cir. 2004). *Greene* explains that a "motivating factor" is one that is a "sufficient condition" for an adverse action. *Greene,* 660 F.3d at 978–79. If Plaintiff furnishes a *prima facie* case, the burden shifts to Defendants to rebut the causal inference raised by Plaintiff's evidence.  If Defendants fail to counter Plaintiff's evidence, then Defendants' retaliatory actions are considered a "necessary condition" of Plaintiff's harm, and Plaintiff has established the but-for causation needed to succeed on his claim. *Id.* at 980.

There simply is no direct evidence of unlawful retaliation in this case (see *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005) ("Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption"), and thus Plaintiff must point to enough circumstantial evidence that could support a reasonable jury finding that Plaintiff was not

11

hired because he campaigned for his wife. Circumstantial evidence is evidence from which a trier of fact may infer that retaliation occurred. See *id.* at 720–21. "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group." *Long v. Teachers' Retirement Sys. of Ill.,* 585 F.3d 344, 350 (7th Cir. 2009) (citation omitted). Importantly, regardless of which type of evidence is offered, "[t]o demonstrate the requisite causal connection in a retaliation claim, [a] plaintiff[ ] must show 'that the protected activity and the adverse action are not wholly unrelated.'" *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918 (7th Cir. 2000) (quoting *Hunt–Golliday v. Met. Water Reclamation Dist.,* 104 F.3d 1004, 1014 (7th Cir. 1997)).

The first glaring problem for Plaintiff is that the allegations in his complaint stand in stark contrast to the factual record in this case. The undisputed evidence in the record establishes that the Board actually voted to remove the Type 75 administrative certification requirement, which Plaintiff did not have, after Plaintiff submitted his application, rather than adding a Type 75 requirement in an effort to disqualify Plaintiff. Thus, the Board's actions actually aided Plaintiff's bid to become H.R. Director. Additionally, there was not a vote over whether his application should be placed on the Open Session agenda. Instead, the Board voted on whether a consensus candidate could be presented to the Open Session, and, when the Board split on Collins and Reynolds for the position of H.R. Director, a motion to table the hiring of the position was voted on and approved unanimously. Thus, despite Plaintiff's allegations to the contrary, neither the District Board nor the individual Defendants voted to add a Type 75 requirement or declare Plaintiff's application invalid; similarly, a vote was never taken to *not* place his application on the Open Session and the Board unanimously voted to table the hiring of the H.R. Director until a later date. These undisputed facts severely undercut, if not completely gut, Plaintiff's First Amendment claim.

In an effort to overcome evidence in the record showing that the voting Board members were simply split between two different candidates for the H.R. Director position—one candidate with substantial private sector experience and one candidate with a Type 75 certification and substantial school district experience—Plaintiff attempts to draw inferences from the record that improper retaliation was the motivation for Defendants' decision not to vote for Plaintiff. Plaintiff first contends that an election day dispute between Board member Janezich and former Board member Gloria Harper, which resulted in Plaintiff interceding to help Janezich, somehow resulted in Defendants taking adverse action against him. However, there simply is no factual basis to support this contention. Even assuming that there existed personal animus between Lanelle Collins' slate and Gloria Harper, Plaintiff has not demonstrated a sufficient nexus between those issues, real or suggested, and Defendants. In fact, the record is contrary to Plaintiff's argument in several respects. First, Gloria Harper did not even run against Plaintiff's wife. Second, Collins did not interact with Myers, Epps or Graham in any capacity before his wife was elected to the School Board, nor was Collins aware of any personal arguments or disputes between Myers, Epps, Graham, and his wife. Finally, the most that can be gleaned from the record is that Epps and Myers observed the dispute on Election Day. The fact that two Defendants may have observed—but were not involved in—the confrontation does not provide a sufficient nexus between Plaintiff's campaigning activities and Defendants' decision to vote for Reynolds over Plaintiff.

Plaintiff also highlights evidence in the record that he was part of an initial pool of candidates (one of three) presented to the District Board for consideration for the H.R. Director position on September 10, 2009. As evidence of retaliation, Plaintiff asserts that Defendants Myers, Epps, and Graham asked Superintendent Hakanen to "expand the pool of people from which to choose" at this meeting. However, a review of the citation to the record relied on by Plaintiff reveals that it does not support the position that Myers, Epps, or Graham

specifically made this request. Rather, Dr. Hakanen stated only that "the Board" wanted to expand the pool of people from which to choose. And, even assuming that Myers, Epps, and Graham did request to see additional candidates, it was an action agreed to by the Board as a whole and nothing points to any discriminatory motive. Instead, the reasonable inference is that the Board wanted to interview additional candidates with more school district experience. In short, the record does not support the inference that at Myers, Epps and Graham acted with improper intent in requesting additional candidates, even assuming that they made the request. Seeking to interview a candidate with both a Type 75 certification and substantial school district experience for the position of H.R. Director of District 187 does not approach being an unreasonable (or discriminatory) request.

Plaintiff next argues that the testimony of Epps, Myers, and Graham that they favored candidate Patricia Reynolds, whom they believed to be more qualified because of her school district experience and credentials (Reynolds held a Type 75 certification), was pretext for their animus toward Plaintiff. Plaintiff comes to this conclusion by arguing that the asserted "rationale" is contradicted by evidence in the record showing that Graham, Epps, and Myers voted for Martha Gutierrez, who does not hold a Type 75 Certificate, as an H.R. Director in 2011. This argument not only ignores Defendants' other stated reasons for preferring Reynolds—she had substantial school district experience and interviewed well—but also ignores record evidence that establishes that Myers was not even a Board member in 2011 and that neither Graham nor Epps was present at the meeting where Gutierrez was voted on and hired.

Additionally, the record establishes that Navy representative Chief Anna Douglas also favored Reynolds because she felt that Reynolds was a more qualified candidate. And, although Janezich voted for Collins, she testified in her deposition that Reynolds "filled the whole page" and that she would have voted for her had it not been for her relationship with

Plaintiff's wife.[5] Finally, Dr. Hanaken's memorandum identified Collins and Reynolds as the top candidates, but then encouraged the Board to consider the appearance of nepotism in making its decision—a consideration which only cut against Plaintiff's candidacy.

In further support of his argument that Defendants were motivated by a retaliatory animus, Plaintiff cites to the affidavit and deposition testimony of Lanelle Collins to support his contention that in 2011 Epps called to apologize to Lanelle Collins for not hiring Plaintiff in 2009 because he was the most qualified. The affidavit of Lanelle Collins is contrary to her deposition testimony concerning the subject telephone call. In her deposition, Lanelle testified that Epps said she was sorry that Collins was not hired on the basis of not having a Type 75 certification because the Board eventually hired someone without a Type 75. In contrast, the later-filed affidavit states that Epps said she was sorry that Collins was not hired because he was the most qualified. To the extent that statements in an affidavit contradict deposition testimony, the Court will not consider the affidavit in ruling on the summary judgment motions. See *Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 292 (7th Cir. 1996) ("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony"); see also *Patterson v. Chicago Ass'n for Retarded Citizens,* 150 F.3d 719, 720 (7th Cir. 1998). Lanelle's affidavit, claiming that Epps stated that Plaintiff was "more qualified," despite her prior deposition testimony that the decision came down to the Type 75 certification, is precisely the type of self-serving affidavit that the case law cited above forbids. See *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993) (finding that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for

---

[5] It is not lost on the Court that Plaintiff brings this lawsuit seeking to recover for First Amendment retaliation when the record contains direct evidence that each member of his wife's ticket voted for him (and to remove the Type 75 certification, which would have been an obstacle to his hiring) and that one of those Board members (Janezich) testified that she felt pressured by Plaintiff's wife to do so because they were on the same ticket and were going to "stick together."

summary judgment"). To the extent that the affidavit—which was drafted after Lanelle Collins' deposition and after Defendants moved for summary judgment—conflicts with the deposition testimony, it will not be considered. The deposition testimony does not indicate a retaliatory animus; rather, the deposition testimony simply indicates that Epps was sorry that one of the Board's stated reasons for not hiring Collins did not prohibit a future Board (minus any Defendants) from hiring Gutierrez. However, as set forth previously, Epps did not vote to hire Gutierrez, so this fact is of little import.

Given the record evidence, Plaintiff's argument can be best summed up as follows: he was the only qualified candidate, he should have been hired, and the failure of the Board to reach a consensus vote for him amounts to an adverse employment action. Put another way, Plaintiff seems to suggest that District 187 should have decided to forego the entire process of taking applications and interviewing candidates and simply hired him for the job. Having failed to identify suspicious timing, ambiguous oral or written statements, or suspect behavior towards or comments directed at Plaintiff, the result urged by Plaintiff leads to the illogical conclusion that any Board member who did not vote for Collins would be found to have acted adversely to him if they did anything but vote for him. Simply put, Plaintiff was not "entitled" to be the District 187 H.R. Director merely because he was qualified. The very reason for the screening and interviewing was to further a hiring "process," which by necessity includes a competition between multiple candidates. Aside from his own assumptions about the process, the factual record in this case fails to establish that without political animosities, Plaintiff would have been hired for the job. Rather, there is ample evidence in the record that Plaintiff was not hired because another qualified candidate stood in his way—a candidate that had a Type 75 certification (deemed important by four Board member, including non-voting member Douglas, and the superintendent) and extensive school district experience, who interviewed well by all accounts, and who was supported by half of

16

the voting members of the Board, a non-voting member, and the superintendent. Thus, Plaintiff has failed to demonstrate that his campaign activities motivated the Board's decision to table the hiring decision in 2009 or to hire Gutierrez in 2011 and he has similarly failed to demonstrate any basis for concluding that Defendants' stated reasons for not hiring Plaintiff were pretextual.

**IV.    Conclusion**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment [110]. Judgment will be entered in favor of Defendants and against Plaintiff.

Dated: May 13, 2013    _____
                       Robert M. Dow, Jr.
                       United States District Judge